**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**

1:26-CV-23237-KMW
Judge Kathleen M. Williams

SECURITIES AND EXCHANGE COMMISSION,

      Plaintiff,

      v.

REIGN FINANCIAL INTERNATIONAL, LLC, *ET AL.*,

      Defendants.

_____/

**DEFENDANTS BERONE CAPITAL, LLC, JEREMIAH BEGUESSE,
AND FABIAN STONE'S MOTION TO DISMISS THE COMPLAINT'S
EIGHTH AND NINTH CLAIMS FOR RELIEF AND INCORPORATED
MEMORANDUM OF LAW**

Defendants BERONE CAPITAL, LLC, Mr. JEREMIAH BEGUESSE, and

Mr. FABIAN STONE (collectively "Berone Defendants"), pursuant to Fed. R.

Civ. P. 12(b)(6) and 9(b), respectfully move this Court to dismiss the

Complaint's Eighth and Ninth Claims for Relief.

**I.    Procedural History**

On May 7, 2026, the Securities and Exchange Commission ("SEC") filed

a complaint against the above-referenced defendants. (Compl., ECF No. 1.)

The forty-six pages of the complaint allege primarily a fraudulent

investment scheme involving three fraudulent high-yield investment

programs perpetrated by defendants Reign Financial International, LLC,

1

Reign Financial International, Inc. (collectively "Reign"), Mr. Giorgio Johnson, Mr. Gary Mills, and Mr. Patrick Allen. (*See generally id.*) The Complaint also alleges that Berone Defendants misappropriated assets from a hedge fund which they managed that held investors' funds from those investment programs. (*See generally id.*)

Among the nine claims for relief, only two claims concern Berone Defendants, and involve only two investors out of the thirty-one alleged victims in this case.

Specifically, the Eighth Claim for Relief alleges that Berone Defendants committed fraud by investment adviser in violation of the Investment Advisers Act of 1940 ("Advisers Act") § 206(1), which is codified as 15 U.S.C. § 80b-6(1). (Compl. 42, ECF No. 1.) The claim alleges that Berone Defendants, "while acting as investment advisers, by the use of the mails or any means or instrumentality of interstate commerce, directly or indirectly with scienter, employed a device, scheme, or artifice to defraud any client or prospective client." (*Id.*)

The Ninth Claim for Relief alleges that Berone Defendants committed fraud by investment adviser in violation of the Advisers Act § 206(2), which is codified as 15 U.S.C. § 80b-6(2). (Compl. 42, ECF No. 1.) The claim alleges that Berone Defendants, "while acting as investment advisers, by the use of the mails or any means or instrumentality of interstate commerce, directly or

indirectly engaged in a transaction, practice, or course of business which operated as a fraud or deceit upon any client or prospective client." (*Id.*)

Berone Defendants submit that, although the allegations in the complaint appear voluminous, a careful review of the Complaint reveals that it fails to state a viable claim under the Advisers Act §§ 206(1) and (2).

## II.    Legal Standard

Fed. R. Civ. P. 12(b)(6) states that a complaint must give a defendant "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (internal quotation omitted). Dismissal under Fed. R. Civ. P. 12(b)(6) is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Id.* at 558.

"A [Fed. R. Civ. P.] 12(b)(6) motion tests . . . the sufficiency of the claim set out in the plaintiff's pleadings." *Harris v. Procter & Gamble Cellulose Co.*, 73 F.3d 321, 324 (11th Cir. 1996). "Plausibility is the key, as the well-pled allegations must nudge the claim across the line from conceivable to plausible." *Jacobs v. Tempur-Pedic Int'l, Inc.*, 626 F.3d 1327, 1333 (11th Cir. 2010) (internal quotation omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

Furthermore, the Complaint in this case must satisfy Fed. R. Civ. P. 9(b)'s pleading requirements because it expressly alleges a fraudulent scheme. Fed. R. Civ. P. 9(b) states that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). "Under Rule 9(b), claims of fraud must be plead with particularity, which means identifying the who, what, when, where, and how of the fraud alleged." *Omnipol, A.S. v. Multinational Defense Services, LLC*, 32 F.4th 1298, 1307 (11th Cir. 2022) (internal citation omitted). "The particularity rule serves an important purpose in fraud actions by alerting defendants to the precise misconduct with which they are charged and protecting defendants against spurious charges of immoral and fraudulent behavior." *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001). More specifically,

> Rule 9(b) is satisfied if the complaint sets forth (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.

*Ziemba*, 256 F.3d at 1202 (internal quotation omitted).

A plaintiff's failure to satisfy the requirements of Fed. R. Civ. P. 9(b) is independently warrants dismissal. *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1012 (11th Cir. 2005). The United States Court of Appeals for the Eleventh Circuit

specifically has rejected allegations of fraud that fail to identify a defendant's particular statement, or the timing and manner in which funds allegedly reached that defendant. *Omnipol*, 32 F.4th at 1307–8.

### III.   The Eighth and Ninth Claims for Relief Fail to State a Viable Claim Pursuant to the Advisers Act §§ 206(1) and (2)

The Advisers Act § 206(1) prohibits an investment adviser from employing "any device, scheme, or artifice to defraud any client or prospective client." 15 U.S.C. § 80b-6(1). It requires scienter. *ZPR Inv. Mgmt., Inc. v. SEC*, 861 F.3d 1239, 1247–48 (11th Cir. 2017).

The Advisers Act § 206(2) prohibits an investment adviser from engaging in a transaction, practice, or course of business that "operates as a fraud or deceit upon any client or prospective client." 15 U.S.C. § 80b-6(2). § 206(2) does not require scienter, but it does require at least negligence. *ZPR Inv. Mgmt., Inc.*, 861 F.3d at 1247–48.

Berone Defendants submit that Claims Eight and Nine fail to state a viable claim under the Advisers Act §§ 206(1) and (2) for the following reasons:

### a.   The Complaint Fails to Allege Plausibly That Investors B or C Were Clients of Berone Defendants

The Advisers Act §§ 206(1) and (2) require fraud or deceit upon "any client or prospective client." 15 U.S.C. § 80b-6(1), (2). The Complaint does not plead, plausibly, that any client or prospective-client relationship existed between Berone Defendants and Investors B or C. As a result, the Complaint

5

also fails to establish that Berone Defendants owed any fiduciary duty to those investors. Therefore, the Eighth and Ninth Claims for Relief fail to state a claim.

In *SEC v. Lauer*, 478 F. App'x 550 (11th Cir. 2012) (*per curiam*), the Eleventh Circuit held that "not all hedge fund investors are automatically to be treated as clients of a hedge fund adviser." *Id.* at 557. A client-adviser fiduciary relationship can arise only when "a hedge fund investor receives direct investment advice from a hedge fund adviser." *Id.*

Following *Lauer*, the United States District Court for the Northern District of Georgia, in *SEC v. Mannion*, No. 1:10-CV-3374-WSD, 2013 WL 5999657 (N.D. Ga. Nov. 12, 2013), clarified that "generally, a hedge fund manager's client is the hedge fund itself, and not the investors in the fund. This is because the manager's fiduciary duties are owed to the fund, whose interests can diverge from those of the fund's investors." *Id.* at *3 (internal citation omitted). The court recognized that "[a]n exception to the general rule exists where the hedge fund manager directly advises the investor and a fiduciary relationship can be inferred," but still concluded that the SEC's complaint should be dismissed because the SEC had not pleaded facts showing that the defendants specifically advised the investors. *Id.* at *3-*4. Specifically, although the SEC alleged that the advisers sent investors a letter seeking permission to establish a "side pocket," the court found that the letter

did not establish individualized advice or individualized investor relationships. *Id*. at *4.

The United States Court of Appeals for the District of Columbia Circuit best summarizes the rationale underlying this requirement in *Goldstein v. SEC*, 451 F.3d 873, 881 (D.C. Cir. 2006):

> An investor in a private fund may benefit from the adviser's advice (or he may suffer from it) but he does not receive the advice directly. He invests a portion of his assets in the fund. The fund manager — the adviser — controls the disposition of the pool of capital in the fund. The adviser does not tell the investor how to spend his money; the investor made that decision when he invested in the fund. Having bought into the fund, the investor fades into the background; his role is completely passive.

*Goldstein*, 451 F.3d at 879-880. The D.C. Circuit also examined the SEC's view in proposing relevant rules in this regard, which again support that a hedge fund manager's client is the hedge fund itself:

> [In 1997, the Commission] explained that a "client of an investment adviser typically is provided with individualized advice that is based on the client's financial situation and investment objectives. In contrast, the investment adviser of an investment company need not consider the individual needs of the company's shareholders when making investment decisions, and thus has no obligation to ensure that each security purchased for the company's portfolio is an appropriate investment for each shareholder." Status of Investment Advisory Programs Under the Investment Company Act of 1940, 62 Fed.Reg. 15,098, 15,102 (Mar. 31, 1997). The Commission said much the same in 1985 when it promulgated a rule with respect to investment companies set up as limited partnerships rather than as corporations. The "client" for purposes of the fifteen-client rule of § 203(b)(3) is the limited partnership not the individual partners. *See* 17 C.F.R. § 275.203(b)(3)–1(a)(2). As the Commission wrote in proposing the rule, when "an adviser to an investment pool manages the assets of the pool on the basis of the investment objectives of the

> participants as a group, it appears appropriate to view the pool—
> rather than each participant—as a client of the adviser." Safe
> Harbor Proposed Rule, 50 Fed.Reg. at 8741.

*Goldstein*, 451 F.3d at 880.

The United States Supreme Court embraced a similar conception of the adviser-client relationship in *Lowe v. SEC*, 472 U.S. 181 (1985). After an extensive discussion of the legislative history of the Advisers Act, the Court held that the existence of an advisory relationship depended largely on the character of the advice rendered. Persons engaged in the investment advisory profession "provide personalized advice attuned to a client's concerns." *Lowe*, 472 U.S. at 208. "[F]iduciary, person-to-person relationships" were "characteristic" of the "investment adviser-client relationship[ ]." *Id*. at 210. The Court thought it "significant" that the Advisers Act "repeatedly" referred to "clients," which signified to the Court "the kind of fiduciary relationship the Act was designed to regulate." *Id*. at 208 n.54, 201 n.45.

"This type of direct relationship exists between the adviser and the fund, but not between the adviser and the investors in the fund." *Goldstein*, 451 F.3d at 880. *See also Nat'l Ass'n of Priv. Fund Managers v. SEC*, 103 F.4th 1097, 1103 (5th Cir. 2024) ("[t]he Advisers Act recognizes a fiduciary duty between an investment adviser and his client. In the private fund context, that client is the fund itself—not the fund's investors") (internal citation omitted).

Thus, Berone Defendants' client is the hedge fund itself, not the individual investors. Furthermore, the complaint fails to show that Berone

Defendants provided any direct, person-to-person investment advice to such investors. Therefore, the Eighth and Ninth Claims for Relief shoudl be dismissed.

### 1. Investor B

The Complaint alleges that "the Reign Defendants solicited a $1 million investment from . . . Investor B . . . into a . . . fraudulent high-yield investment program administered by Allen through his entity PBL & 5Js ('the PBL & 5Js Program')." Compl. 21, ECF No. 1. In accordance with the trade agreement with PBL & 5Js, Investor B sent the $1 million investment "to the Berone Fund for 'Further Credit to: PBL & 5Js Holdings, Inc.'" *Id*. at 24. "Investor B believed the reason for this was that PBL & 5Js Holdings held the main account at the Berone Fund, and Investor B's funds would be held in a subaccount." *Id*.

Furthermore, Mr. Allen misappropriated Investor B's funds by lying to Berone Defendants. In this regard, the Complaint acknowledges that "[Mr.] Allen falsely told Berone that Investor B was Allen's escrow attorney and that he had instructed his escrow attorney to send money to fund PBL & 5Js' investment." Compl. 25, ECF No. 1. Investor B's funds were transferred out of the Berone Fund due to Allen's lie, under whose name the account existed. Later, when Investor B checked the status of his investment, he communicated only with the Reign Defendants and Allen, not with Berone Defendants.

Importantly, the Complaint does not allege that there was any contract or any other documentation between Investor B and Berone Defendants. The account at the Berone Fund was in the name of PBL & 5Js, not Investor B. Furthermore, while the Complaint describes communications between Investor B, Reign Defendants, and Mr. Allen, it contains no allegations that there were any communications between Investor B and Berone Defendants. Compl. 21–28, ECF No. 1. Moreover, the Complaint does not allege that Berone Defendants ever provided any investment advice to Investor B. *Id*. Most importantly, the Complaint does not allege that Berone Defendants owed Investor B any fiduciary duty (because they did not). *Id*.

Again, a hedge-fund manager's client is the hedge fund itself, not the investors in the fund. *Lauer*, 478 F. App'x at 557. In this case, Investor B is one step further removed, because Investor B did not subscribe even directly to the Berone Fund, but only allegedly supplied money deposited into another person's account.

Thus, because the Complaint does not allege, plausibly, that Investor B was a client or prospective client of Berone Defendants, the Eighth and Ninth Claims for Relief should be dismissed to the extent that they rely on Investor B's funds.

### 2. Investor C

The Complaint's allegations concerning Investor C are ambiguous and insufficient on the same essential element as that related to Investor B.

10

The Complaint states that, under the Reign Program, "Investor C completed subscription papers for a $20 million investment in the Berone Fund." Compl. 30, ECF No. 1. However, the Complaint does not allege clearly whether a hedge-fund account was opened in Investor C's name, or whether Investor C's funds instead were placed into an account controlled by a co-defendant, similar to the circumstances related to Investor B. This is particularly important when considering the Complaint's allegation that "Reign recruited . . . Investor C . . . in a third fraudulent high-yield investment program that was *similar to* the Compass and PBL & 5Js Programs." *Id*. at 28 (emphasis added).

Although the Complaint describes certain email exchanges between Investor C and Berone Defendants, in no way could such communications cure the aforementioned ambiguity. In those email communications, Berone Defendants made representations regarding their return of funds to Investor C. Still, those communications do not *per se* establish that Berone Defendants entered into an advisor-client relationship with Investor C. These facts are similar to those facts in *Mannion*, in which the court dismissed the SEC's complaint because the defendant's letter regarding the creation of a "side pocket" for an investor did not establish individualized advice or individualized, investor relationships. *Mannion*, 2013 WL 5999657 at *4.

Thus, the Eighth and Ninth Claims for Relief do not establish, plausibly, the client element or any resulting fiduciary duty that Berone Defendants owed to Investor C.

### b.   The Complaint Fails to Allege Plausibly That Mr. Stone Personally Qualified as an Investment Adviser

The "Defendants" section of the Complaint states that "Beguesse is a registered adviser and was formerly a registered representative with multiple SEC-registered broker-dealers." Compl. 7, ECF No. 1. The same section does not contain any allegation that Mr. Stone is also a registered adviser or a registered representative. *Id*.

However, the Complaint then alleges that "Beguesse and Stone qualified as investment advisers for purposes of the Advisers Act." Compl. 36, ECF No. 1. The Complaint's conclusion regarding Mr. Stone is premised on the following allegations:

> Stone was also a 50% owner of Berone, a manager of Berone, and handled the operations for Berone. Moreover, Berone's most recent ADV Part 2B Brochure Supplement for Stone contemplates that he provided investment advice to clients (supervised by Beguesse). As the principals of Berone, Beguesse and Stone were responsible for providing investment management and advisory services for the Berone Fund. Berone was entitled to a management fee from the Berone Fund, which would be shared by Beguesse and Stone.

Compl. 36, ECF No. 1.

An "investment adviser" is defined as "any person who, for compensation, engages in the business of advising others, either directly or

through publications or writings, as to the value of securities or as to the advisability of investing in, purchasing, or selling securities, or who, for compensation and as part of a regular business, issues or promulgates analyses or reports concerning securities . . . ." 15 U.S.C. § 80b-2(a)(11).

The Complaint, to plead plausibly and sufficiently that Mr. Stone is an investment advisor, must identify advisory conduct performed by Mr. Stone, not merely allege his ownership or operational involvement in the hedge fund. A Form ADV brochure, stating generally that Mr. Stone could provide advice under Mr. Beguesse's supervision, does not establish that Mr. Stone actually advised Investor B or Investor C, or the Fund concerning securities. Nor does Mr. Stone's receipt of company distributions establish that he personally provided investment advice for compensation. In no way can the Complaint's generic allegations in this regard satisfy the particularity requirement under Fed. R. Civ. P. 9(b).

Therefore, the claims against Mr. Stone should be dismissed because the Complaint fails to allege, plausibly, his status as an investment advisor within the meaning of the Advisor Act.

### c. The Eighth Claim for Relief Fails to Plead Scienter Plausibly Regarding Investor B

"To prove a violation of section 206(1) of the Adviser's Act, the SEC must show the adviser acted with scienter." *ZPR Inv. Mgmt., Inc.*, 861 F.3d at 1252. Scienter is "a mental state embracing intent to deceive, manipulate, or

defraud." *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 48 (2011) (quotation omitted). The scienter of a corporation is established by showing that its officers or directors acted with scienter. *See Thompson v. RelationServe Media, Inc.*, 610 F.3d 628, 635 (11th Cir. 2010) ("[c]orporations have no state of mind of their own; rather, the scienter of their agents must be imputed to them").

Considering the scienter and particularity requirements of Fed. R. Civ. P. 9(b) together, there is no doubt that the scienter element must be pleaded with a sufficient factual basis, rather than a mere generic conclusion of a defendant's purported state of mind.

The Complaint alleges only that "[t]he Berone Defendants knowingly or with severe recklessness misappropriated" the assets of Investor C. Compl. 35, ECF No. 1. It does not allege the same with regard to Investor B. As demonstrated above, Investor B's funds were transferred out of the Berone Fund due to Mr. Allen's lie. *Id*. at 25. Furthermore, the Complaint does not plead facts showing that Berone Defendants knew about the misrepresentations that co-defendants used to solicit Investor B. *See generally id*.

Therefore, the Eighth Claim for Relief must be dismissed to the extent that it relies on Investor B's funds.

### d.      Claim Nine Fails to Plead Negligence Plausibly

The Adviser's Act § 206(2) does not impose strict liability. Although scienter is unnecessary, the SEC must plead facts establishing at least

negligence. *ZPR Inv. Mgmt., Inc.*, 861 F.3d at 1247.

"Section 206 of the Investment Advisers Act . . . establishes federal fiduciary standards to govern the conduct of investment advisers." *Tenor Cap. Partners, LLC v. GunBroker.com, LLC,* 2026 WL 972981 at *4, No. 22-13911 (11th Cir. Apr. 10, 2026) (internal quotations omitted). "The Investment Advisers Act imposes these duties on any person that meets the definition of an investment advisor, regardless of whether that person is registered." *Id.* (internal quotations omitted).

The Complaint does not plead, plausibly, any client or prospective-client relationship between Investor B or Investor C and Berone Defendants because the investment arrangement was accomplished through co-defendants' investment programs and their accounts with the Berone Fund. Consequently, the Complaint fails to establish that Berone Defendants owed any fiduciary duty to those investors. Absent the prerequisite duty, in no way could the Complaint be deemed to have sufficiently pled the negligence element. Therefore, the Ninth Claim for Relief should be dismissed.

Furthermore, because the Complaint fails to plead any plausible factual basis to show that Mr. Stone qualified as an unregistered investment advisor, the Advisor Act does not impose any fiduciary duty on him. Therefore, the Ninth Claim for Relief should be dismissed against Mr. Stone for this reason alone.

15

## IV.    Conclusion

Berone Defendants, based on the foregoing assertions and argument, respectfully move this Court to dismiss the Eighth and Ninth Claims for Relief with prejudice.

Date:        August 10, 2026

Respectfully submitted,

LOWTHER | WALKER LLC

**_s/ Katryna Lyn Spearman_**
Katryna Lyn Spearman, Esq.
Ga. Bar # 616038
kspearman@lowtherwalker.com

101 Marietta St. NW, Ste. 3650
Atlanta, GA 30303
O 404.496.4052 | F 866.819.7859
www.lowtherwalker.com

HAAS LAW, PLLC

**_s/ David L. Haas_**
David L. Haas, Esq.
Fla. Bar # 494674
david@haaslawpllc.com

201 S Orange Ave., Ste. 1017
Orlando, FL 32801
407.755.7675
www.haaslawpllc.com

Attorneys for Defendants
Berone Capital, LLC,
Jeremiah Beguesse, and
Fabian Stone

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**

1:26-CV-23237-KMW
Judge Kathleen M. Williams

SECURITIES AND EXCHANGE COMMISSION,

      Plaintiff,

    v.

REIGN FINANCIAL INTERNATIONAL, LLC, *ET AL.*,

      Defendants.

**CERTIFICATE OF SERVICE**

I hereby certify that on August 10, 2026, I electronically filed the foregoing DEFENDANTS BERONE CAPITAL, LLC, JEREMIAH BEGUESSE, AND FABIAN STONE'S MOTION TO DISMISS THE COMPLAINT'S EIGHTH AND NINTH CLAIMS FOR RELIEF AND INCORPORATED MEMORANDUM OF LAW with the Clerk of the United States District Court for the Southern District of Florida by way of the CM/ECF system, which automatically will generate a notice of electronic filing and serve this document on the attorneys of record for the parties in this case by electronic mail.

Date:          August 10, 2026

Respectfully submitted,

**_s/ David L. Haas_**
David L. Haas, Esq.
Fla. Bar # 494674
david@haaslawpllc.com

Haas Law, PLLC
201 S Orange Ave., Ste. 1017
Orlando, FL 32801
407.755.7675
www.haaslawpllc.com