**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No.: 1:26-cv-23237-KMW**

**SECURITIES AND EXCHANGE COMMISSION,**

**Plaintiff,**

**v.**

**REIGN FINANCIAL INTERNATIONAL, LLC, *et al.*,**

**Defendants.**

_______________________________________________/

**MOTION OF THE UNITED STATES TO INTERVENE AND FOR A COMPLETE STAY OF DISCOVERY, AND INCORPORATED MEMORANDUM OF LAW**

The United States of America, by and through the United States Attorney for the Southern District of New York (the "Government"), respectfully submits this application (i) to intervene in the above-captioned case, pursuant to Rule 24 of the Federal Rules of Civil Procedure, and (ii) for a complete stay of discovery in this matter until the conclusion of the criminal case captioned *United States v. Patrick Allen*, 25 Cr. 324 (DEH) (the "Criminal Case"), pending in the Southern District of New York. The stay sought by the Government would not apply to the Court's resolution of the pending motion for consent judgment as to defendants Reign Financial International, LLC, Reign Financial International, Inc., Giorgio Johnson, and Gary Mills, which would resolve the civil case as to those defendants. *See* ECF Nos. 4, 11. The Government has conferred with counsel for the Securities and Exchange Commission ("SEC"), who have informed the Government that the SEC does not oppose the Government's request for a stay of discovery. The Government has also conferred with all defendants in this case, who have also informed the Government that they do not oppose the Government's request for a stay.

The Criminal Case arises from the same set of facts and circumstances that underlie this civil action. As a result, the requested stay is appropriate because it would prevent the circumvention of important statutory limitations on criminal discovery and avoid asymmetrical discovery; preserve the Court's resources; and prejudice no party to this civil action. In similar situations, courts in this District and others have stayed parallel civil actions when there is a related criminal prosecution with overlapping defendants and facts, even over a defendant's objection, a circumstance not present here. *See, e.g.*, *SEC v. Huff*, No. 09-20087-CIV, 2010 WL 11447249, at *3 (S.D. Fla. Jan. 19, 2010) (granting government's motion for a stay of discovery over objection of defendants); *Barleta v. Schein*, Civ. No. 23-23422, 2024 WL 6953508, at *4 (S.D. Fla. Feb. 8, 2024) (granting government's motion for a stay of discovery over objection of plaintiff); *SEC v. Schneider*, 17 Civ. 81142 (RLR) (S.D. Fla. Dec. 12, 2017) Order (Dkt. 21) at 1; *SEC v. Hwang, et al.*, No. 22 Civ. 3402 (JPO), 2023 WL 6124041, at *18-19 (S.D.N.Y. Sept. 19, 2023) (granting government's motion for a full stay of discovery over objection of defendants); *SEC v. Javice*, No. 23 Civ. 2795 (LJL), 2023 WL 4073797, at *4-8 (S.D.N.Y. June 20, 2023) (granting full stay of discovery over defendant's objection and alternative suggestion of partial stay of discovery); *CFTC v. Alexandre*, No. 22 Civ. 3822 (VEC), Dkt. No. 160 (S.D.N.Y. Sept. 2, 2022) (granting full stay over defendant's objection and proposal to permit depositions to proceed); *SEC v. Milton*, No. 21 Civ. 6445 (AKH), Dkt. No. 40 (S.D.N.Y. Aug. 8, 2022) (granting government's motion for a full stay over defendant's objection); *SEC v. Sarshar*, No. 20 Civ. 6865 (GBD), Dkt. No. 35 (S.D.N.Y. June 3, 2021) (same); *SEC v. Carroll,* No. 19 Civ. 7199 (AT), 2020 WL 1272287, at *2-5 (S.D.N.Y. Mar. 17, 2020) (same).

For the reasons that follow, the Government respectfully requests that this Court enter an order staying discovery in this action until the completion of the Criminal Case.

## BACKGROUND

This case and the Criminal Case arise out of the same underlying events: Patrick Allen's multipronged scheme to defraud investors of millions of dollars based on false promises of massive investment returns. On July 17, 2025, a federal grand jury sitting in the Southern District of New York returned an indictment against Allen, charging him with one count of wire fraud, in violation of 18 U.S.C. § 1343, and one count of money laundering, in violation of 18 U.S.C. § 1956(a)(1)(B)(i). The Indictment is attached as Exhibit A. U.S. District Court Judge Dale E. Ho, to whom the criminal case is assigned, has set a trial date of October 5, 2026.

The factual allegations of the Criminal Case are set forth in a criminal complaint, which was issued on May 16, 2025 and is attached as Exhibit B. As alleged in the criminal complaint, Allen's investment fraud scheme involved three "tranches" of conduct.

In the "First Tranche," Allen, through "Company 1," solicited over $5 million in investor funds from over twenty investors—including Victims 1, 2, and 3—for use in a trading program that would purportedly return the full value of each victim's investment within four to six weeks, with additional profits thereafter. Ex. B. ¶¶ 9, 10. "Company 1" in the criminal complaint is Reign Financial International, LLC and Reign Financial International, Inc. (together, "Reign"), which are named as defendants in the civil action. ECF No. 1 ¶¶ 14-15. Reign was operated by Giorgio Johnson and Gary Mills, who are also named as defendants in the civil action. *Id.* ¶¶ 16-17. Allen's trading program was administered by Compass Fuel & Oil, Inc. ("Compass"), a Florida corporation incorporated and controlled by Allen. Ex. B. ¶¶ 7, 9. Nine of Allen's victims, who had deposited approximately $2.4 million with Allen between June and September 2021, never received any of their money back. *Id.* ¶¶ 9, 9(e). Financial records show that after receiving the investor funds, Allen used none of it for investment purposes. *Id.* ¶ 14. Instead, he transferred the money to multiple accounts he controlled, and used it on personal expenses,

including, among other things, a private jet subscription service and purchases from a sports ring company. *Id.* ¶¶ 14-16.

As alleged in the criminal complaint, Reign was the intermediary between Allen and his victims. *Id.* ¶ 9. Multiple of Allen's victims relied on statements made to them by Reign about the reliability of Allen's Compass trading program. For example, Reign told Victim 2 that it had done business with Compass in the past and that those investments had been profitable. *Id.* ¶¶ 9(b), 12. Reign made similar representations about the Compass trading program to Victim 1. *Id.* ¶¶ 9(f), 11. After Victim 1 and Victim 2 deposited their funds with Allen's Compass trading program, they regularly communicated with Reign about the status of investments, and Reign communicated on Allen's behalf regarding delays in the return of the funds. *Id.* ¶¶ 13(a)-(d).

The "Second Tranche" described in the criminal complaint alleges that in 2022, Company 1—that is, Reign—introduced Victim 4 to Allen and "Investment Adviser 1." *Id.* ¶ 17. Investment Adviser 1 in the criminal complaint is Berone Capital LLC ("Berone Capital"), one of the named defendants in the civil action. ECF No. 1 ¶ 19. Berone Capital is operated by Jeremiah Beguesse and Fabian Stone, who are also named as defendants in the civil case. *Id.* ¶¶ 20-21. As alleged in the criminal complaint, Reign solicited Victim 4 to make a $1 million investment with Berone Capital, which Reign represented would be placed in a trading program administered by Allen and his company, PBL. Ex. B ¶¶ 17, 18(c)-(d). Representatives from Reign told Victim 4 that their $1 million investment in the PBL Program would be returned in full after six to eight weeks, after which additional profits—up to $55 million—would be disbursed to Victim 4 over the course of the following twelve months. *Id.* ¶¶ 18(a)-(f). To memorialize the terms of the investment, Victim 4 was asked to sign three contracts with Reign and one with Allen. *Id.* ¶¶ 18(b)-(d). Victim 4 wired their investment to Berone Capital on or about April 21, 2022. *Id.* ¶ 20(a). Instead of using Victim 4's money for the trading program described in the signed

contracts, Berone transferred the funds through multiple accounts it controlled and sent approximately $105,900 to an account Allen controlled in the name of PBL. *Id.* ¶¶ 20(a)-(e). Allen transferred these funds through multiple other accounts he controlled and spent it on personal expenses, such as tickets to sports events, flights, hotels, and cash withdrawals. *Id.* ¶¶ 21(a)-(c). Victim 4 never received their investment back, despite their repeated outreach to Allen and Reign about the status of the funds. *Id.* ¶¶ 24(a)-(e), 25, 27.

The "Third Tranche" described in the criminal complaint alleges that in 2024, Allen induced Victim 5 to invest over $400,000 in a trading program based on the promise that the program would generate large profits and that Victim-5 could request the return of her funds at any time. *Id.* ¶¶ 28-29. Allen spent the money on personal expenses—including for jewelry, food, travel, cash withdrawals, and university donations—and did not use it for the promised investment activity. *Id.* Allen's conduct with respect to Victim 5 is not at issue in the SEC complaint.

On May 7, 2026, the SEC filed the instant action against Allen, Reign, Johnson, Mills, Berone Capital, Beguesse, and Stone. The SEC complaint alleges that (i) Reign, Johnson, and Mills violated, and aided and abetted violations of, Sections 17(a)(1) and (a)(3) of the Securities Act and Section 10(b) of the Exchange Act and Rules 10b-5(a) and (c) thereunder (SEC Complaint ¶¶ 139-141, 145-148, 153-158); (ii) Allen violated Sections 17(a)(1) and (a)(3) of the Securities Act and Section 10(b) of the Exchange Act and Rules 10b-5(a) and (c) thereunder (SEC Complaint ¶¶ 142-144, 149-152); (iii) Johnson is liable as a controlling person under Section 20(a) of the Exchange Act (SEC Complaint ¶¶ 150-162); and (iv) Berone Capital, Beguesse, and Stone violated Sections 206(1) and (2) of the Investment Advisers Act (SEC Complaint ¶¶ 163-168).

The allegations in the SEC complaint relate to the first two tranches of Allen's criminal fraud scheme and overlap significantly with the allegations in the criminal complaint.

Specifically, the SEC complaint alleges that from March 2021 to late 2022, the Reign defendants solicited and participated in the offering of "high yield" trading opportunities to approximately 31 different investors, promising unrealistically high returns with little or no risk, through programs administered by Allen and his companies, Compass and PBL. ECF No. 1 ¶¶ 30-33. The SEC complaint's description of the "Compass Program" (ECF No. 1 ¶¶ 34-70) corresponds to the criminal complaint's description of the first tranche of Allen's scheme. The SEC complaint's description of the "PBL Program" (ECF No. 1 ¶¶ 71-97) corresponds to the criminal complaint's description of the second tranche of Allen's scheme. Because of the degree of overlap between the SEC complaint and the Criminal Case, Allen's criminal trial will involve proof of substantially all of the conduct alleged in the SEC complaint as to the Compass Program and the PBL Program.

## ARGUMENT

The Government's requests to intervene and for a complete stay of discovery in this civil action should be granted. If this case were to proceed, there would be a risk of significant interference with the Criminal Case. A complete stay of discovery would prejudice no party to this case; ensure that statutory limitations on criminal discovery are not circumvented through asymmetrical discovery; and promote judicial economy, because many of the issues presented by the civil action are likely to be resolved in the Criminal Case. Significantly, all of the parties consent to a stay of discovery.

### I. THE GOVERNMENT SHOULD BE GRANTED PERMISSION TO INTERVENE

Under Rule 24(a)(2) of the Federal Rules of Civil Procedure, anyone may intervene as of right in an action when the applicant "claims an interest relating to the property or transaction that is the subject of the action" and the applicant "is so situated that 'disposing of the action may as a practical matter impair or impede the movant's ability to protect its interests. . . .'" *See also Georgia v. United States Army Corps of Eng'rs.*, 302 F.3d 1242, 1249 (11th Cir. 2002) (a party is

entitled to intervene as a matter of right "if the party's interest in the subject matter of the litigation is direct, substantial, and legally protectable"). Alternatively, Rule 24(b)(2) provides for permissive intervention when the movant "has a claim or defense that shares with the main action a common question of law or fact." The Government respectfully submits that its application satisfies both of these provisions given the effect this civil proceeding would have on the Criminal Case and the similarity of claims and facts between the related actions.

As a general rule, courts "have allowed the government to intervene in civil actions—especially when the Government wishes to do so for the limited purpose of moving to stay discovery." *Twenty First Century Corp. v. LaBianca*, 801 F. Supp. 1007, 1009 (E.D.N.Y. 1992); *see also SEC v. Credit Bancorp.*, 297 F.3d 127, 130 (2d Cir. 2002). The Government has a "discernible interest in intervening in order to prevent discovery in a civil case from being used to circumvent the more limited scope of discovery in the criminal matter." *SEC v. Chestman*, 861 F.2d 49, 50 (2d Cir. 1988).

Intervention is warranted here because the Government's interests in upholding the public interest in enforcement of the criminal laws cannot be protected adequately by the existing parties in this civil litigation, none of whom represent the Government's interests with respect to the investigation and enforcement of federal criminal statutes. *See Bureerong v. Uvawas*, 167 F.R.D. 83 (C.D. Cal. 1996) ("[T]he Government's prosecutorial and investigative interest is not adequately protected by any of the civil parties . . . . Clearly neither the plaintiff or the defendants have this identical interest.").

Moreover, depositions in this action in advance of a criminal trial could impair or impede the Government's ability to protect its interests in the enforcement of federal criminal law. This case and the related Criminal Case arise from the same alleged scheme to defraud investors as described above. Proceeding with the civil case before the Criminal Case is resolved would create

the possibility that there will be overlapping litigation and potentially two trials covering the same acts. This would raise the probability that witnesses would be unnecessarily burdened by having to testify twice. In light of those circumstances, the Government respectfully submits that its unopposed application to intervene should be granted. *See Huff*, 2010 WL 11447249, at *4 (permitting Government intervention where motion was timely and "both cases involve substantially the same conduct").

## II. A COMPLETE STAY OF DISCOVERY IN THIS ACTION IS APPROPRIATE

### A. Applicable Law

This Court has the inherent power to stay civil proceedings in the interests of justice pending the completion of a related criminal case. *Clinton v. Jones*, 520 U.S. 681, 706 (1997) ("The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket."); *see also Johnson v. Bd. of Regents of Univ. of Ga.*, 263 F.3d 1234, 1269 (11th Cir. 2001) ("[W]e accord district courts broad discretion over the management of pre-trial activities, including discovery and scheduling."). Indeed, "[t]he inherent discretionary authority of the district court to stay litigation pending the outcome of [a] related proceeding in another forum is not questioned." *CTI-Container Leasing Corp. v. Uiterwyk Corp.*, 685 F.2d 1284, 1288 (11th Cir. 1982); *see also Kashi v. Gratsos*, 790 F.2d 1050, 1057 (2d Cir. 1986) ("[A] court may decide in its discretion to stay civil proceedings . . . when the interests of justice seem . . . to require such action.") (internal citations and quotations omitted).

When considering whether to grant a stay of a parallel civil action, courts consider the following factors:

> (1) the extent to which the issues in the criminal case overlap with those presented in the civil case; (2) the status of the case, including whether the defendants have been indicted; (3) the private interests of the plaintiffs in proceeding expeditiously weighed against the prejudice to plaintiffs caused by the delay; (4) the private interests of

> and burden on the defendants; (5) the interest of the court; and (6) the public interest.

*Carroll*, 2020 WL 1272287 at *2 (quoting *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 99 (2d Cir. 2012)); *Barleta*, 2024 WL 6953508, at *1 (listing similar factors); *Huff*, 2010 WL 11447249, at *3 (same); *SEC v. Treadway*, 04 Civ. 3464 (VM) (JCF), 2005 WL 713826, at *2-3 (S.D.N.Y. March 30, 2005) (same); *see also Volmar Distrib., Inc. v. New York Post Co., Inc.*, 152 F.R.D. 36, 39 (S.D.N.Y. 1993) (same). "Balancing these factors is a case-by-case determination, with the basic goal being to avoid prejudice." *Id.* But the factors "can do no more than act as a rough guide for the district court as it exercises its discretion" and do not replace the Court's "studied judgment as to whether the civil action should be stayed based on the particular facts before it and the extent to which such a stay would work a hardship, inequity, or injustice to a party, the public or the court." *Louis Vuitton* 676 F.3d at 99. The Court's "decision ultimately requires and must rest upon a particularized inquiry into the circumstances of, and the competing interests in, the case." *Id.* (quotation marks omitted).

**B. Discussion**

Application of these factors here weighs in favor of the Government's requested stay of discovery.

1. <u>The Extent of Overlap</u>

The facts of this civil case overlap substantially with the Criminal Case and similar issues will be decided in each case. This weighs heavily in favor of a stay. "Several courts have . . . held that[] [t]he degree to which the issues in the simultaneous civil and criminal proceedings overlap is the most important threshold issue in deciding whether the court should stay the civil proceeding." *Huff*, No. 09-20087-CIV, 2010 WL 11447249, at *3 (internal quotations omitted); *see also Volmar Distrib.*, 152 F.R.D. at 39 ("The most important factor at the threshold is the

degree to which the civil issues overlap with the criminal issues."); *Parker v. Dawson*, 06 Civ. 6191 (JFB), 2007 WL 2462677, at *4 (E.D.N.Y. Aug. 27, 2007) (same); *United States v. One 1964 Cadillac Coupe DeVille*, 41 F.R.D. 352, 353 (S.D.N.Y. 1966) ("Where both civil and criminal proceedings arise out of the same or related transactions the government is ordinarily entitled to a stay of all discovery in the civil case until disposition of the criminal matter.").

Here, the facts of the civil case overlap significantly with the facts alleged in the Criminal Case. Proof in the Criminal Case will cover substantially the same facts through the same witnesses as would be presented in this case. Even where, as here, a regulator has made allegations against additional defendants, or even alleged additional misconduct, courts generally stay discovery if there is "substantial overlap between the civil and criminal proceedings." *SEC v. Tuzman*, No. 15 Civ. 7057 (AJN), ECF No. 43, at 2-3 (S.D.N.Y. Mar. 1, 2016) (ordering a partial stay of discovery, over opposition, notwithstanding that some fraudulent conduct charged in the civil case was not referenced in the criminal indictment); *SEC v. Bauer et al.*, No. 22 Civ. 3089 (RA), ECF No. 62 (ordering complete stay of discovery where the fraudulent conduct charged in the civil case included defendants not named as defendants in the criminal case and covered a broader set of stocks than the criminal indictment). That is not surprising given that, whether the regulatory action is broader than the Criminal Case or vice-versa, the issue relevant to whether a stay is appropriate is the same: whether it is likely that substantially the same set of facts would have to be proven twice in two different proceedings, draining resources from the courts, the Government, and the parties, and inconveniencing witnesses. *See, e.g.*, *SEC v. Shkreli*, 15 Civ. 7175 (KAM), 2016 WL 1122029, at *4 (E.D.N.Y. Mar. 22, 2016); *Tuzman*, No. 15 Civ. 7057 (AJN), ECF No. 43, at 3. Here, that is unambiguously the case.

Accordingly, this factor weighs heavily in favor of a stay. *See Barleta*, 2024 WL 6953508, at *2 (overlap weighed in favor of stay where plaintiff's material misrepresentations "is

a core issue in this case . . . and in his ongoing criminal prosecution for securities fraud"); *Huff*, 2010 WL 11447249, at *4 (granting stay where "the two cases are intertwined in that both cases involve the same witnesses, documents, and alleged conduct").

2. Status of the Criminal Case

The filing of the Indictment in the Criminal Case is also a factor that weighs in favor of a stay. "[T]he strongest argument for granting a stay is where a party is under criminal indictment." *Shkreli*, 2016 WL 1122029, at *5 (quotation and citation omitted). "A stay of a civil case is most appropriate when a party to the civil case has already been indicted for the same conduct for two reasons: first, the likelihood that a defendant may make incriminating statements is greatest after an indictment has issued, and second, the prejudice to the plaintiffs in the civil case is reduced since the criminal case will likely be quickly resolved." *Trustees of Plumbers and Pipefitters Nat'l Pension Fund, et al. v. Transworld Mechanical, Inc.*, 886 F. Supp. 1134, 1139 (S.D.N.Y. 1995); *see also In re Par Pharm, Inc. Sec. Litig.*, 133 F.R.D. 12, 13 (S.D.N.Y. 1990) (weight of authority supports the stay of a civil proceeding "when the criminal investigation has ripened into an indictment"). Here, Allen was indicted over a year ago, the Government has produced Rule 16 material, and a trial date has been set for October 5, 2026. The steady forward progress of the Criminal Case and the impending trial date strongly favors a stay. *See Tuzman*, 15 Civ. 7057 (AJN), at 3 (noting that an indictment normally weighs heavily in favor of a stay absent particular facts indicating that the criminal case may not be resolved expeditiously); *Huff*, 2010 WL 11447249, at *4 (defendant's criminal trial date just four months away weighed in favor of stay).

3. The Potential Prejudice to the Parties

No prejudice to the parties will result from the requested stay. The SEC and all defendants have informed the Government that they support the Government's request for a stay of discovery. The stay sought by the Government would not prevent the Court from entering the

proposed consent judgments as to Reign, Johnson, and Mills, thereby permitting an agreed-upon resolution as to those defendants. *See* ECF Nos. 4, 11. There are not currently any discovery deadlines or a trial date in place in this action, and there will be no undue delay in the proceedings as a result of the stay. And precisely because of the substantial overlap in factual issues between this case and the Criminal Case, all parties will likely be benefitted—not prejudiced—by avoiding costly depositions, should some or all prove unnecessary.

In addition, were the civil action to proceed, either the SEC or Allen—or both—is likely to be prejudiced by the prospect of Allen's deposition. A stay of discovery will prevent Allen from having to choose between asserting his Fifth Amendment rights during civil discovery and thereby being prejudiced in this action or asserting those rights and thereby being prejudiced in the Criminal Case. *See Shkreli*, 2016 WL 1122029, at *3 n.3 ("[C]riminal defendants frequently seek stays in parallel civil enforcement proceedings, often due to an adverse inference that can arise from a party's invocation of the Fifth Amendment privilege against self-incrimination.").[1] And a stay of discovery will prevent the SEC from the prejudice of having its own witnesses sit for deposition while Allen shields himself from any reciprocal obligations. After the Criminal Case concludes, the need for certain depositions will be mooted by collateral estoppel or Allen's Fifth Amendment rights will no longer apply and his deposition can proceed without controversy. *See Milton*, 21 Civ. 6445 (Dkt. 40) at 9 (staying SEC action over defendant's objection where "allowing civil discovery to proceed could prejudice the SEC in this action because it would result in largely one-sided discovery, as Defendant would be able to notice depositions, gather scores of documents and witness testimony from the SEC, without being subjected to the same process.").

---

[1] Indeed, Allen has filed his own motion to stay the civil case based in part on this ground. *See* ECF No. 27.

4. Judicial Economy

Considerations of judicial economy also weigh in favor of granting a stay. Issues common to both cases can be resolved in the criminal proceeding, thereby simplifying the civil action. *See Barleta*, 2024 WL 6953508, at *3 ("[T]he Court exercises its discretion to grant a stay to avoid the unnecessary expense of simultaneously hearing issues that will be raised and may be decided in the criminal prosecution."); *cf. SEC v. Contorinis*, 09 Civ. 1043 (RJS), 2012 WL 512626, at *2 (S.D.N.Y. Feb. 3, 2012) ("Courts in this district have consistently found that a defendant convicted of securities fraud in a criminal proceeding is collaterally estopped from relitigating the underlying facts in a subsequent civil proceeding."); *SEC v. One or More Unknown Purchasers of Sec. of Glob. Indus., Ltd.*, 11 Civ. 6500 (RA), 2012 WL 5505738, at *4 (S.D.N.Y. Nov. 9, 2012) ("[T]he Civil Case is likely to benefit to some extent from the Criminal Case no matter its outcome."); *LaBianca*, 801 F. Supp. at 1010-11 (recognizing judicial economy as a factor to be considered). Because the Criminal Case's outcome will likely affect the conduct, scope, and result of the civil proceeding, potentially streamlining issues in this matter and avoiding duplication of effort and judicial resources, this factor favors the Government's application.

5. The Public Interest

The Government and the public have an important interest in ensuring that civil discovery is not used to circumvent the well-founded restrictions that pertain to criminal discovery—restrictions that, *inter alia*, preserve the truth-seeking functions of the criminal process by restraining the ability of criminal defendants to tailor testimony, suborn perjury, manufacture evidence or intimidate witnesses. *See United States v. Percevault*, 490 F.2d 126, 129 (2d Cir. 1974) (noting that the Jencks Act, 18 U.S.C. § 3500, "represents a legislative determination that access to a witness' statements could be useful in impeaching a witness but was not intended to be utilized in preparation for trial"); *United States v. McCarthy*, 292 F. Supp. 937, 942 (2d Cir. 1968)

("The claimed need to see such statements in advance in order to prepare to rebut them is little more than open notice of an intention to tailor testimony to fit the statement."); *SEC v. Nicholas*, 569 F. Supp. 2d 1065, 1070 (C.D. Cal. 2008) (the criminal rules were "purposefully limited so as to prevent perjury and manufactured evidence, to protect potential witnesses from harassment and intimidation, and to level the playing field between the government and the defendant, who would be shielded from certain discovery by the Fifth Amendment").

In *Tuzman*, the court outlined three principal Government interests justifying a stay of discovery of civil proceedings while parallel criminal proceedings are pending:

> First, broad disclosure of the essentials of the prosecution's case may lead to perjury and manufactured evidence. Second, revelation of the identity of prospective witnesses may create the opportunity for intimidation. Third, criminal defendants may unfairly surprise the prosecution at trial with information developed through [civil] discovery, while the self-incrimination privilege would effectively block any attempts by the Government to discover relevant evidence from the defendants.

*Tuzman*, 15 Civ. 7057 (AJN), at 3-4 (internal citations and quotations omitted). Based on these concerns, courts have frequently granted Government requests to limit discovery in a related civil action to prevent the civil discovery rules from being subverted into a device for improperly obtaining discovery in the criminal proceeding. *See, e.g., id.* (granting stay sought by Government); *Huff*, 2010 WL 11447249, at *4 (same); *Barleta*, 2024 WL 6953508, at *3 (same); *SEC v. Beacon Hill Asset Management LLC*, 02 Civ. 8855 (LAK), 2003 WL 554618, at *1 (S.D.N.Y. Feb. 27, 2003) (in granting government's motion to stay, court noted: "The principal concern with respect to prejudicing the government's criminal investigation is that its targets might abuse civil discovery to circumvent limitations on discovery in criminal cases."); *Phillip Morris Inc. v. Heinrich*, 95 Civ. 328 (LMM), 1996 WL 363156, at *19 (S.D.N.Y. June 28, 1996) (granting stay motion because if "civil discovery is not stayed, the criminal investigation will be prejudiced,

as the Defendants may have an opportunity to gain evidence to which they are not entitled under criminal discovery rules."); *Bd. of Governors of the Federal Reserve System v. Pharaon*, 140 F.R.D. 634, 639 (S.D.N.Y. 1991) ("'A litigant should not be allowed to make use of the liberal discovery procedures applicable to a civil suit as a dodge to avoid the restrictions on criminal discovery and thereby obtain documents he would not otherwise be entitled to for use in his criminal trial.'" (quoting *Campbell v. Eastland*, 307 F.2d 478, 487 (5th Cir. 1952))).

Indeed, in *Huff*, Judge Lenard cited these very concerns in granting a stay of discovery as to a defendant indicted in a parallel criminal case, observing that "[t]he use of civil discovery rules to obtain the testimony of special agents or privileged documents could significantly hamper the criminal prosecution," and that "the public has a strong interest in protecting the integrity of criminal prosecutions." *Huff*, 2010 WL 11447249, at *4. So too did Chief Judge Altonaga in *Barleta*, noting the concern that granting discovery in a parallel civil proceeding "was an open invitation to taxpayers under criminal investigation to subvert the civil rules into a device for obtaining pre-trial discovery against the Government in criminal proceedings." *Barleta*, 2024 WL 6953508, at *3 (internal quotations omitted). *See also Milton*, 21 Civ. 6445 (Dkt. 40) at 9-10 (observing that the public's interest in preserving the integrity of the criminal proceedings would be "undermined" by allowing civil discovery to proceed).

This rationale is even stronger where, as here, the defendant has been indicted, given that a defendant in a charged criminal case will likely invoke his Fifth Amendment rights in the civil case and not participate in the very civil discovery process he seeks to use affirmatively. *See, e.g., Barleta*, 2024 WL 6953508, at *3 (noting risk of defendant's circumvention of criminal discovery rules is "magnified" where a criminal prosecution is ongoing); *SEC v. Calabrigo*, 22 Civ. 3096 (LJL), 2022 WL 4752427, at *5 (S.D.N.Y. Sept. 30, 2022) (discussing strategic use by a defendant of his Fifth Amendment right in civil proceedings); *Nicholas*, 569 F. Supp. 2d at 1070 (noting

when granting full stay that "[t]he specter of parties and witnesses invoking their Fifth Amendment rights would render discovery largely one-sided; the SEC would produce scores of documents and witness testimony only to be precluded from gathering reciprocal discovery from the defendants"). A denial of the Government's requested stay would therefore result in asymmetrical discovery in this case, pursuant to which Allen would be able to obtain statements from relevant witnesses through depositions, while the SEC would be unable to use any of these discovery mechanisms to obtain information from Allen because of his likely assertion of Fifth Amendment rights. Such asymmetry is both unfair and a circumvention of the criminal discovery rules that govern when criminal defendants are entitled to obtain prior statements of the Government's trial witnesses. *See* 18 U.S.C. § 3500(b) (prior statements of Government witnesses must be made available after the witnesses have testified on direct examination).

Therefore, in order to avoid circumvention of the criminal discovery restrictions, including the provisions that are designed to prevent a defendant from tailoring his testimony and obtaining asymmetrical discovery, and because Allen will not in any way be prejudiced in preparing and defending himself, this factor weighs in favor of the Government's application.

## CONCLUSION

For the reasons set forth above, the Government respectfully requests that its application to intervene and for a complete stay of discovery in this matter be granted.

Dated: New York, New York
August 19, 2026

Respectfully submitted,

JAMES M. MCDONALD
United States Attorney

By: /s/
William C. Kinder
Rebecca Delfiner
Cameron Molis
Joseph Stern
Assistant United States Attorneys
Telephone: (212) 637-2394/2427/1085/0074

**JASON REDING QUINONES**
**UNITED STATES ATTORNEY**

By: /s/ *Carlos Raurell*
Assistant U.S. Attorney
Florida Bar No. 529893
United States Attorney's Office
Southern District of Florida
99 NE 4th Street, Florida 33132
Telephone: (305) 961-9243
E-mail: carlos.raurell@usdoj.gov