**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No.: 1:26-cv-23237-WILLIAMS-LETT**

**SECURITIES AND EXCHANGE COMMISSION,**

**Plaintiff,**

**vs.**

**REIGN FINANCIAL INTERNATIONAL, LLC;**
**REIGN FINANCIAL INTERNATIONAL, INC.;**
**GIORGIO JOHNSON;**
**GARY MILLS;**
**PATRICK ALLEN;**
**BERONE CAPITAL, LLC;**
**JEREMIAH BEGUESSE; and**
**FABIAN STONE,**

**Defendants.**
_____________________________________________/

**PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S OPPOSITION TO DEFENDANTS BERONE CAPITAL, LLC, JEREMIAH BEGUESSE, AND FABIAN STONE'S MOTION TO DISMISS CLAIMS EIGHT AND NINE**

Plaintiff Securities and Exchange Commission ("SEC") respectfully submits this Opposition to Defendants Berone Capital, LLC ("Berone Capital"), Jeremiah Beguesse, and Fabian Stone's (collectively "Berone Defendants") Motion to Dismiss the Complaint's Eighth and Ninth Claims for Relief (Dkt. No. 26).

For the reasons set forth below, the Court should deny the Berone Defendants' Motion. First, the Motion depends almost entirely on the erroneous premise that the SEC alleged that Investors B and C were the "clients" for purposes of its claims under Sections 206(1) and 206(2) of the Investment Advisers Act of 1940 ("Advisers Act") [15 U.S.C. § 80b-6(1), (2)] (Claims Eight and Nine). The Complaint clearly alleges that Berone Capital Fund LP ("Berone Fund"), which was the hedge fund that the Berone Defendants managed—and not Investors B and C—was the "client" to whom the Berone Defendants owed fiduciary duties for purposes of Claims

Eight and Nine. As a result, virtually all of Defendants' arguments in support of their Motion fail because they rely on this faulty premise. Specifically, the Berone Defendants' arguments—that (1) Stone did not act as an investment adviser to Investors B and C; (2) Defendants did not act with scienter with respect to Investor B to support the Eighth Claim for Relief; and (3) Defendants owed a duty to Investors B and C rather than the Fund to support the Ninth Claim for Relief—all fail because they depend on Defendants' mischaracterization of the Complaint's allegations. Second, to the extent the Berone Defendants argue more broadly that the Complaint fails to allege that Stone was an investment adviser to the Berone Fund instead of the individual investors, this argument also fails because the Complaint plausibly alleges that Stone qualified as an investment adviser to the Berone Fund under Adviser Act Section 202(a)(11).

## RELEVANT BACKGROUND AND PROCEDURAL HISTORY

### A. SEC's Complaint

On May 7, 2026, the SEC filed its Complaint alleging securities fraud and other violations of the securities laws against the named Defendants. (Dkt. No. 1, "Compl.") Specifically, the Complaint charges Defendants Reign Financial International, LLC; Reign Financial International, Inc; Georgio Johnson; and Gary Mills (collectively, "Reign Defendants") and Defendant Patrick Allen with violations of Section 17(a)(1) and (3) of the Securities Act of 1933 [15 U.S.C. § 77q(a)(1), (3)] and Section 10(b) of the Securities Exchange Act of 1934 [15 U.S.C. § 78j(b)] and Rules 10b-5(a) and (c) thereunder [17 C.F.R. § 240.10b-5(a), (c)] for perpetrating a fraudulent investment scheme, raising over $26 million through the offer and sale of securities in multiple fraudulent high-yield investment programs. (*See generally id.*; *id.* ¶¶ 139-62.) The SEC's Complaint also charges the Reign Defendants with aiding and abetting Allen's violations. (*Id.* ¶¶ 153-58.)

In connection with this fraudulent scheme, the Complaint further alleges that Defendant Berone Capital, a state-registered investment adviser during the relevant time period, and Defendants Jeremiah Beguesse and Fabian Stone, Berone Capital's co-owners, managers, and only employees, were investment advisers who violated Sections 206(1) and 206(2) of the Advisers Act by knowingly or with severe recklessness misappropriating, or permitting other Defendants' misappropriation of, assets from the Berone Fund that they managed. (*See generally, e.g.,* Compl. ¶¶ 6, 19-21, 85-89, 106-17, 123-38, 163-68.)

As set forth in the Berone Fund's governing documents, the Berone Fund was to operate as a pooled investment vehicle through which the assets of the General Partner (Berone Capital) and the Limited Partners (the investors in the Fund) would be invested in a variety of securities and financial interests.[1] (*Id.* ¶¶ 19, 124, 127.) Berone Capital managed and advised the Berone Fund and was responsible for the investment strategy, portfolio management, and all investment decisions of the Berone Fund, including day-to-day management of the Berone Funds' investment activities and holdings. (*See id.* ¶¶ 6, 19, 124-27.) For its services, Berone Capital was to receive "Management Fees" equal to ¼ of 2% per quarter (approximately 2% annually) of each Limited Partners' share of the Partnership's Net Asset Value (generally equal to the amount by which the value of the Fund's assets exceeds the amount of is liabilities). (*Id.* ¶ 128, 130.) Berone Capital's management fees from the Berone Fund would be shared by its two principals, Beguesse and Stone. (*Id.* ¶ 130.)

Beguesse and Stone were each 50% owners of Berone Capital. (*Id.* ¶ 130.) Beguesse was the Chief Compliance Officer, and he was also principally responsible for providing

---

[1] The Berone Fund governing documents, including the Offering Memorandum and Subscription Agreement identified and incorporated by reference into the Complaint (*see* Compl. ¶¶ 87, 89, 106, 107, 123-30, 137) identify the Berone Fund as the General Partner and the Fund investors as Limited Partners, and these roles can also be reasonably inferred from the allegations in the Complaint.

discretionary advice and trading securities on behalf of Berone Capital's clients. (*Id.* ¶¶ 20, 130.) Stone served as a manager of Berone Capital and handled its operations. (*Id.* ¶¶ 21, 130.) Berone Capital's most recent ADV Part 2B Supplement regulatory filing for Stone contemplates that he provided investment advice to clients under the supervision of Beguesse. (*Id.* ¶ 130.) As the only two principals of Berone Capital, Beguesse and Stone were responsible for providing investment management and advisory services for the Berone Fund and would share Berone Capital's management fees. (*Id.* ¶¶ 19, 130.)

As alleged in the Complaint, funds from two investors in the fraudulent high-yield investment programs that Allen and the Reign Defendants administered were ultimately invested in and were to be held in the Berone Fund. Specifically, Investor B's funds were used to fund Allen's investment in the Berone Fund (*id.* ¶¶ 82-89), and Investor C's funds were invested in the Berone Fund and were to be held there to facilitate Reign's administration of the Reign Program (*id.* ¶¶ 104-12). Stone communicated directly with Investor C, advising him about his investment in the Berone Fund. (*See id.* ¶¶ 107-12.) Among the issues discussed, Stone's communications addressed (1) authorizing exceptions to the subscription documents and Berone Fund requirements; (2) the use of Investor C's funds for Reign's investment program, (3) the unwinding of the investment, control and management of the funds, and return thereof, and (4) options for Investor C's continued subscription in the Berone Fund. (*Id.*)

As its investment advisers, the Berone Defendants owed fiduciary duties to the Berone Fund, including duties of care, loyalty, and good faith to act in the best interests of the Berone Fund. (*E.g.*, *id.* ¶ 131.) In violation of their fiduciary duties and the terms of the Berone Fund governing documents, the Berone Defendants knowingly or with severe recklessness commingled and misappropriated Berone Fund assets for their own personal use and benefit, including by purchasing jewelry, luxury cars, and private jet travel for their personal use, and by

allowing other Defendants to misappropriate some of the funds. (*E.g., id.* ¶¶ 6, 85-89, 113-17, 131-38.)

**B. Defendants' Responses to the Complaint**

On May 11, 2026, the SEC filed a Motion for Entry of Final Judgment as to the Reign Defendants, requesting that the Court enter the proposed consent final judgments to effectuate a settled resolution of the SEC's claims against the Reign Defendants. (Dkt. No. 4.)[2] The SEC's request for entry of the proposed consent final judgments remains pending.

Allen was served with the Complaint on May 28, 2026, and, upon Allen's requests, the Court extended his response deadline twice to the current August 17, 2026 deadline. (Dkt. Nos. 7, 13, 24.) To date, Allen has not responded to the Complaint. Instead, Allen filed a motion requesting a stay and request for production of certain early discovery in light of federal criminal charges against him in a parallel case pending in the United States District Court for the Southern District of New York, which, at least in part, relate to Allen's alleged fraudulent conduct in this case. (Dkt. No. 27.) Separately, the United States Attorney's Office for the Southern District of New York ("USAO") filed a motion to intervene and for a stay of discovery in this case. (Dkt. No. 28.) The SEC responded to both motions that it does not oppose a general stay, which would also address the USAO's requested stay of discovery, but it does oppose Allen's (1) alternative request for a partial stay limited only to his discovery obligations and (2) his request for production of early discovery. (Dkt. No. 29.) Allen's and the USAO's respective motions are currently pending.

On August 10, 2026, the Berone Defendants filed the present Motion to Dismiss. (Dkt.

[2] On June 5, 2026, the SEC filed a Notice of Revised Proposed Final Judgments, informing the Court of a change to the SEC's rules of informal procedure—rescission of its no-deny policy, codified in 17 C.F.R. § 202.5(e)—and submitting revised proposed consent final judgments to reflect the change. (Dkt. No. 11.)

No. 26.) The SEC filed an unopposed motion to extend the time to respond in light of the pending motions to stay. (Dkt. No. 30.) On August 26, 2026, the Court granted in part the SEC's motion, ordering the SEC to respond to the motion to dismiss on or before August 28. (Dkt. No. 31.)

**STANDARD OF REVIEW**

Federal Rule of Civil Procedure 8(a)(2) requires that a Complaint allege only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Mere "labels and conclusions" are insufficient. *Id*. A complaint must be liberally construed, with the court assuming the facts alleged therein as true and drawing all reasonable inferences from those facts in the plaintiff's favor. *See Wooten v. Quicken Loans, Inc.*, 626 F.3d 1187, 1196 (11th Cir. 2010) (citing *Iqbal*, 556 U.S. at 678). A complaint should not be dismissed simply because the court is doubtful that the plaintiff will be able to prove all of the necessary factual allegations. *Twombly*, 550 U.S. at 555. A well-pleaded complaint will survive a motion to dismiss even if it appears "that a recovery is very remote and unlikely." *Id.* at 556 (citation and internal quotation marks omitted).

Pursuant to Federal Rule of Civil Procedure 9(b), a party alleging fraud "must state with particularity the circumstances constituting fraud," but conditions of a person's mind, such as malice, intent, and knowledge, "may be alleged generally." Fed. R. Civ. P. 9(b). "Rule 9(b) must be read in conjunction with Rule 8(a) of the Federal Rules of Civil Procedure, which requires a plaintiff to plead only a short, plain statement of the grounds upon which he is entitled

to relief." *SEC v. Eakes*, 2024 WL 692622, at *2 (M.D. Fla. Feb. 20, 2024) (internal citation and quotation marks omitted).

**ARGUMENT**

**A. The Complaint Properly Alleges the Berone Fund Is the Client**

Sections 206(1) and 206(2) of the Advisers Act prohibit fraudulent conduct by investment advisers with respect to their clients. Specifically, Section 206(1) of the Advisers Act prohibits investment advisers from employing "any device, scheme, or artifice to defraud any client or prospective client." 15 U.S.C. § 80b–6(1). Section 206(2) of the Advisers Act similarly prohibits investment advisers from engaging in "any transaction, practice, or course of business which operates as a fraud or deceit upon any client or prospective client." 15 U.S.C. § 80b–6(2). Although there may be instances in which hedge fund investors are the "client" or "prospective client" of the hedge fund's investment adviser, the "client" of the investment adviser to a hedge fund is the fund itself. *See SEC v. Lauer*, 478 Fed. Appx. 550, 556-57 (11th Cir. 2012); *United States v. Lay*, 612 F.3d 440, 446-47 (6th Cir. 2010) (discussing *Goldstein v. SEC*, 451 F.3d 873 (D.C. Cir. 2006)).

Here, the Complaint states viable claims for Defendants' violations of Sections 206(1) and 206(2) of the Advisers Act because it properly alleges that the Berone Fund was the client to whom the Berone Defendants owed fiduciary duties, which the Berone Defendants expressly concede. (*E.g.*, Compl. ¶ 131 ("As investment advisers, the Berone Defendants owed fiduciary duties to the Berone Fund, including a duty of care, loyalty, and good faith to act in the best interests of the Berone Fund"); *see also id.* ¶ 6 ("The Berone Defendants also violated their fiduciary duties and the terms of the Berone Fund governing documents . . ."); *id.* ¶ 123 ("The Berone Defendants knowingly or with severe recklessness misappropriated assets from the Berone Fund in violation of their fiduciary duties, the terms of the Berone Fund documents . .

."); (Mot. at 8) ("Berone Defendants' client is the hedge fund itself, not the individual investors.").

Because all parties agree that the Berone Fund is the alleged "client," Defendants' argument that the SEC has not alleged a fiduciary relationship with Investors B and C (Mot. at 5-12) is irrelevant and does not justify dismissal. The SEC need not plead such a relationship to state a claim. However, the Complaint's allegations pertaining to Investor B and C, including the connection between the high-yield investment programs and their Berone Fund investments and deposits, the Berone Defendants' communications with and concerning Investor B and C, and the Berone Defendants' commingling and misappropriation of Berone Fund assets (that included the individual investors' funds) for personal investments, purchases, and other uses, are still relevant because they show how the Berone Defendants' perpetrated a scheme to defraud the Berone Fund in violation of Advisers Act Sections 206(1) and (2). *Cf. e.g., SEC v. Conrad*, 2017 WL 3485766, at *10-11 (N.D. Ga. Feb. 22, 2017) (finding allegations that defendant misappropriated investor money that was invested in the Funds for personal use, including to purchase personal investments in his name rather than in the name of the Funds, were sufficient to show that defendant committed fraud upon the client Funds in violation of the Advisers Act).

**B. Defendants' Remaining Arguments Fail Because the Berone Fund, Not Investors B and C, Is the Alleged "Client"**

As set forth below, almost all of Defendants' arguments similarly fail because they are premised on Defendants' mischaracterization of the Complaint allegations and incorrect identification of investors B and C as the "clients" at issue.

**1. The Complaint Alleges That Stone Qualified as an Investment Adviser to The Berone Fund, Not to Investors B and C**

Because the Berone Fund is the "client" at issue, the Complaint need not allege that Stone served as an investment adviser to Investors B and C, as Defendants argue in support of their

Motion to Dismiss. (*See* Mot. Section III.b at 13 (arguing that the Complaint " . . . does not establish that Mr. Stone actually advised Investor B or Investor C . . ."). Rather, as discussed further below, the Complaint plausibly alleges that Stone qualified as an investment adviser to the Berone Fund, which is all that is required at this stage. *See infra* Section C.

**2. The Complaint Alleges the Berone Defendants Acted With Scienter When Engaged in Their Scheme to Defraud the Berone Fund**

The Berone Defendants' argument that the SEC fails to plead scienter because it only alleges scienter as to Investor C and not Investor B should be rejected for the same reasons discussed above. Scienter is an element of a violation of Section 206(1) of the Advisers Act, but it is not required to prove violations of Section 206(2), for which a showing of negligence is sufficient. *ZPR Investment Mgmt., Inc. v. SEC*, 861 F.3d 1239, 1247 (11th Cir. 2017); *Steadman v. SEC*, 603 F.2d 1126, 1134 (5th Cir. 1979). Scienter is "a mental state embracing intent to deceive, manipulate, or defraud," and it "may be established by a showing of knowing misconduct or severe recklessness." *ZPR Investment Mgmt., Inc.*, 861 F.3d at 1252 (internal citations and quotation marks omitted). Severe recklessness can be shown through "highly unreasonable" conduct involving "an extreme departure from the standards of ordinary care, and that present a danger of misleading [investors] which is either known to the defendant or is so obvious that the defendant must have been aware of it." *Woods v. Barnett Bank of Ft. Lauderdale*, 765 F.2d 1004, 1010 (11th Cir. 1985). Scienter may be alleged generally in a Complaint. Fed. R. Civ. P. 9(b).

Here, the SEC has plausibly alleged that the Berone Defendants acted with "scienter" when engaged in their scheme to defraud the Berone Fund. The Complaint alleges that the Berone Defendants knew or were severely reckless in not knowing that misappropriation of funds from the Berone Fund for the personal benefit of themselves and their friends and family violated their fiduciary duties and the Berone Fund's governing documents. (*E.g.*, Compl.

¶¶ 123, 132-38.) A number of the allegations pertaining to Investors B and C demonstrate the Berone Defendants' severe recklessness and highly unreasonable conduct that is an extreme departure from the standard of care and the fiduciary duties the Berone Defendants owed to the Berone Fund. Such allegations include, for example: ignoring red flags and allowing Allen's subscription to be funded by Investor B and then lying about it; allegedly authorizing exceptions to the governing Fund documents that would not be in the Fund's interests; misrepresentations regarding the use of funds invested in the Berone Fund; transferring the funds from Investor C out of the Berone Fund immediately after deposit and in contradiction to the Berone Fund documents and representations to Investor C; and allowing Allen and the Reign Defendants to misappropriate funds and misappropriating funds themselves. (*See* Compl. ¶¶ 6, 82-89, 106-17, 120, 132-37.)

**3. The Complaint Properly States a Claim for Negligence Under Advisers Act § 206(2) for the Berone Defendants' Breach of Their Fiduciary Duties to the Berone Fund**

Finally, for similar reasons discussed above, the Court should reject the Berone Defendants' argument that the Complaint fails to state a claim for negligence because it does not plead a client relationship with Investors B and C that would give rise to the required fiduciary duties to support a negligence claim. (*See* Mot. Section III.d.)

As discussed above, the Complaint expressly alleges that the Berone Defendants owed fiduciary duties to the Berone Fund, rather than Investors B and C, and breached its fiduciary duties to the Berone Fund by commingling and misappropriating funds for their personal use to support a claim for negligence under Advisers Act Section 206(2). (Compl. ¶ 131 ("As investment advisers, the Berone Defendants owed fiduciary duties to the Berone Fund, including a duty of care, loyalty, and good faith to act in the best interests of the Berone Fund"); *see also id.* ¶ 6 ("The Berone Defendants also violated their fiduciary duties and the terms of the Berone Fund governing documents by misappropriating hedge fund assets for their own personal use and

benefit, including jewelry, luxury cars, and private jet travel."); *id.* ¶ 123 ("The Berone Defendants knowingly or with severe recklessness misappropriated assets from the Berone Fund in violation of their fiduciary duties, the terms of the Berone Fund documents, and their representations to Investor C."). That the Complaint contains other allegations concerning Investors B and C relevant to this claim does not alter this analysis.

### C. The Complaint Sufficiently Alleges That Stone Qualified as an Investment Adviser

To the extent the Berone Defendants argue that the Complaint does not plausibly allege that Stone qualified as an investment adviser to the Berone Fund (*see* Mot. Section III.b.), that argument also fails.

Section 202(a)(11) of the Advisers Act defines an "investment adviser" as "any person who, for compensation, engages in the business of advising others, either directly or through publications or writings, as to the value of securities or as to the advisability of investing in, purchasing, or selling securities, or who, for compensation and as part of a regular business, issues or promulgates analyses or reports concerning securities . . . ." 15 U.S.C. § 80b-2(a)(11).

This definition of "investment adviser" "encompasses anyone who manages the funds of others for compensation or controls an investment advisory firm." *SEC v. Kinetic Investment Grp., LLC*, 2024 WL 4869623, at *42 (M.D. Fla. Nov. 22, 2024) (quotation marks omitted) (citing cases). It also includes those who maintain an "exercise of control over what purchases and sales are made with investors' funds." *United States v. Ogale*, 378 Fed. Appx. 959, 960 (11th Cir. 2010) (finding defendant was "advising others" by informing investors that their investment would be used to trade foreign currency futures and options, even if he never used the investors' money to trade); *see United States v. Elliott,* 62 F.3d 1304, 1310 (11th Cir. 1995) (concluding that defendants provided investment advice both by advising on the choice of investment vehicles and controlling the investment vehicles in which their customers invested);

*Abrahamson v. Fleschner,* 568 F.2d 862, 871 (2d Cir. 1977) (stating that "many investment advisers 'advise' their customers by exercising control over what purchases and sales are made with their clients' funds"), *abrogated in part on other grounds by Transamerica Mortg. Advisors, Inc. v. Lewis*, 444 U.S. 11 (1979). Hedge fund general partners and individuals who manage the fund's day-to-day activities and the funds of others meet the definition of "investment adviser" in the Advisers Act. *See Lauer*, 478 Fed. Appx. at 557 (finding defendant qualified as an investment adviser by managing the day-to-day activities of the Fund and also that he proffered advice directly to the Funds' investors when hosting meets and teleconferences and when suggesting in the newsletter that his market strategy could meet market returns); *Goldstein*, 451 F.3d at 876 ("Hedge fund general partners meet the definition of 'investment adviser' in the Advisers Act."); *Abrahamson,* 568 F.2d at 869–71 (holding that hedge fund general partners are "investment advisers"); *SEC v. Haligiannis*, 470 F. Supp. 2d 373, 383 (S.D.N.Y. 2007) (finding the general partners that had exclusive control over the management, investment policies, and investment objectives of a hedge fund were "investment advisers").

The compensation element under the Advisers Act is satisfied by the receipt of any economic benefit for the investment advisory activity, which could include fees in any form or the commingling and use of investors' money to pay personal expenses. *See Ogale*, 378 Fed. Appx. at 960-61 (finding defendant's use of misappropriated investors' funds to pay his personal expenses qualified as compensation under the Advisers Act); *Elliott*, 62 F.3d at 1311 n.8 ("Th[e] compensation element is satisfied by the receipt of any economic benefit, whether in the form of an advisory fee or some other fee relating to the total services rendered, commissions, or some combination of the foregoing.") (citation and internal quotation marks omitted); *see also United States v. Miller*, 833 F.3d 274, 282 (3d Cir. 2016) (holding defendant received compensation for

securities advice when he commingled investors' accounts and spent the money for his own purposes on luxury cars, home furnishings, electronics, and vacations).

Here, the Complaint plausibly alleges that Stone qualified as an investment adviser for the Berone Fund because both elements are satisfied. First, the Complaint alleges that Stone engaged in the business of advising concerning securities. The Complaint alleges that Stone directly, and through his ownership and control of Berone Capital, managed the day-to-day operations and funds of Berone Capital and the Berone Fund and was responsible for providing investment management and advisory services for the Berone Fund. (*See* Compl. ¶¶ 6, 19, 21, 124-131.) Specifically, the Complaint alleges that Stone was 50% owner, manager, and handled the operations of Berone Capital. (*E.g., id.* ¶¶ 19, 21, 130.) Berone Capital served as the investment adviser and General Partner of the Berone Fund that was responsible for investment strategy, portfolio management, and all the investment decisions of the Berone Fund, including day-to-day management of the Berone Fund's investment activities and holdings. (*E.g., id*. ¶¶ 6, 19, 21, 124-31.) The allegations pertaining to Stone's ownership and control of Berone Capital, read together with the allegations concerning Berone Capital's role and responsibilities as investment adviser of the Berone Fund, are sufficient to satisfy this element. (*See id.*)

The Complaint also alleges specific instances when Stone carried out Berone Capital's responsibilities and management of the Fund by managing investments, communicating with investors about investment terms and strategy and use of invested funds, including, for example, in his communications with Investor C. (*E.g.*, Compl. ¶¶ 106-11.) *See Kinetic Investment Group, LLC*, 2024 WL 4869623, at *43 (finding defendant carried out investment adviser Kinetic Group's responsibilities by soliciting investors to Kinetic Funds, directing the Funds' investments, and communicating with the Funds' investors about investment strategy and performance, including informing investors about where their money would be invested and

advising that principal would be secure). The Complaint also alleges that Berone Capital's most recent ADV Part 2B Brochure Supplement for Stone contemplates that he provided investment advice to clients under Beguesse's supervision. (Compl. ¶ 130.)

Second, the Complaint plausibly alleges that Stone engaged in the business of advising with respect to securities for compensation. As alleged in the Complaint, Berone Capital would receive management fees (on a percentage basis that were charged to each Limited Partner's Capital Account), in exchange for managing the Fund and its investments in various investments, and this fee would be shared by Stone and Beguesse, who owned and controlled Berone Capital. (*Id.* ¶¶ 19, 128-30.) *See Kinetic Investment Group, LLC*, 2024 WL 4869623, at *43 (holding Defendant received compensation for providing advice to investors because he received a 1% management fee through Kinetic Group, the entity he owned and controlled that managed the Fund). In addition, the Complaint alleges that Stone and the other Berone Defendants commingled and misappropriated funds from the Berone Fund for their personal use, including using the funds to purchase corporate bonds that named Beguesse and Stone as beneficiaries, luxury cars, Atlanta Hawks tickets, private jet travel, and jewelry. (*E.g.*, Compl. ¶¶ 131-37.) Further, the Complaint alleges that, between November 22 and December 14, 2022, the Berone Defendants received $330,000 from Party A, who had received a total of $11.9 million that was misappropriated from the Berone Fund for a short-term financial transaction with the Reign Defendants. (*Id.* ¶¶ 113-17.) That transaction was neither authorized by the Berone Fund's governing documents nor consistent with the Berone Defendants' and Reign Defendants' representations to Investor C. (*See id.* ¶¶ 106-17.) As noted above, these all qualify as economic benefits associated with engaging in the business of investment advising and, therefore, compensation, for purposes of the Advisers Act.

The fact that Stone was not registered as an investment adviser is not determinative as to whether Stone qualifies as an investment adviser under the Advisers Act, as the Berone Defendants suggest. (Mot. Section III.b. at 12.) The Advisers Act "prohibits fraud by 'any' investment adviser, regardless of registration." *Miller*, 833 F.3d at 283 (quoting 15 U.S.C. § 80b-6); *Koch v. SEC*, 793 F.3d 147, 156-57 (same); *see also Tenor Capital Partners, LLC v. Gunbroker.com, LLC*, 2026 WL 972981, at *4 (11th Cir. Apr. 10, 2026) ("The Investment Advisers Act imposes [fiduciary] duties on any person that meets the definition of an investment advis[e]r, regardless of whether that person is registered.") (citation omitted). If registration were actually determinative, people could avoid sanctions simply by choosing not to register. *See SEC v. Blavin*, 557 F. Supp. 1304, 1311-12 (E.D. Mich. 1983) ("It is obvious that a rule of law applicable to a registered investment adviser is even more applicable to [defendant] who was not registered and who was thus conducting his activities outside of any form of public control.").

Finally, as discussed above, the allegations demonstrating Stone qualifies as an investment adviser are not limited to paragraph 130 of the Complaint cited in Defendants' Motion. Rather, Stone qualifies as an investment adviser for purposes of the Advisers Act based on his roles and responsibilities with respect to Berone Capital and the Berone Fund, the activity in which he engaged, and the various economic benefits he received, as alleged throughout the Complaint and discussed above. Contrary to the Berone Defendants' critique of these allegations (Mot. at 13), nothing more is required at this stage.

Accordingly, accepting the factual allegations as true and viewing all inferences in the SEC's favor, the Complaint plausibly alleges that Stone qualified as an investment adviser to the Berone Fund under the Advisers Act.

**CONCLUSION**

For the foregoing reasons, the SEC respectfully submits that the Berone Defendants' Motion to Dismiss should be denied.

Respectfully submitted,

Date: August 28, 2026

By: /s/ *Jennifer Farer*
Jennifer L. Farer
Gov. Atty. Bar ID No. A5503498
Direct Dial: (202) 551-5072
Email: farerj@sec.gov

James M. Carlson
S.D. Florida Bar # A5501534
Direct Dial: (202) 551-3711
Email: carlsonja@sec.gov

100 F Street, N.E.
Washington, D.C. 20549-5977

*Attorneys for Plaintiff Securities and Exchange Commission*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on August 28, 2026, I electronically filed the foregoing with the Clerk of the Court using CM/ECF and sent a copy via email and First Class Mail to *pro se* Defendant Patrick Allen and via email to counsel for the Reign Defendants.

/s/ *Jennifer Farer*
Jennifer L. Farer, Esq.